UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Minnesota Valley Broadcasting
Company,

   Plaintiff,

v.              MEMORANDUM OPINION AND
                 AND ORDER
                Civil No. 07-4158

Three Eagles of Lincoln, Inc., and
Three Eagles Communications, LLC,

   Defendants.
_____

  Julia Ketcham Corbett and Beth A. Serrill, Blethen, Gage & Krause, PLLP for and on behalf of Plaintiff.

  Timothy D. Kelly, Paul R. Hannah and Jennifer S. Pirozzi, Kelly & Berens, P.A. for and on behalf of Defendants.

_____

Procedural Background

  On September 28, 2007, Plaintiff obtained an ex parte temporary restraining order ("TRO") in state court, which enjoined Defendants from contacting radio personalities Lisa Wood and Anthony Palesotti, or interfering with their employment contracts with Plaintiff, and allowing Wood and Palesotti to exercise their employment contracts.

  On October 2, 2007, Defendants removed the action to federal court,

asserting this Court has diversity jurisdiction over Plaintiff's claims. Defendants have brought a motion to vacate the TRO, and for injunctive relief. Plaintiff has moved to remand this matter to state court, for an extension of the TRO, and for an immediate hearing. In the alternative, Plaintiff moves for preliminary injunctive relief, enjoining Defendants from interfering with the employment contracts of Wood and Palesotti.

Factual Background

Clear Channel Broadcasting, Inc. ("CCU") owned three radio stations in the Mankato, Minnesota market. In early 2007, CCU offered these stations for sale. Defendants were interested in buying the stations, but FCC rules prohibited Defendants from purchasing all three stations. Plaintiff was interested in purchasing one of the stations, KXLP(FM), which had a rock format, but CCU would only negotiate with Defendants. Because Defendants were interested in the station with a country format, KYSM(FM), Defendants agreed to buy the three stations from CCU, and simultaneously sell KXLP to Plaintiff.

CCU had entered into employment contracts with two radio personalities who broadcast during the morning drive on KYSM; Lisa Wood and Anthony Palesotti. The term of these employment contracts run through June 30, 2008, with an option to extend to June 30, 2009. Defendants assert that Wood and Palesotti were successful at KYSM and were a profitable part of the operation of

the station.  Defendants further assert that in their negotiations with Plaintiff as to the sale of KXLP, it was generally agreed that Defendants would retain all assets related to KYSM, including all employment contracts.

In connection with the sale of KXLP to Plaintiff, the parties entered into an Asset Purchase Agreement ("APA") on April 5, 2007.  The APA consisted of a twenty-seven page contract, with an attached schedule.  Generally, the APA provided that Plaintiff would purchase the assets "used or held for use" in the operation of KXLP, and no other stations.  APA, ¶ 1.1.  The attached schedules listed the specific assets and property that would subject to the APA.

After the APA was executed on April 5, 2007, negotiations continued with respect to the specific items that would be included in the final schedule as of the closing date, September 1, 2007.  During this time, the parties interviewed certain employees who provided services to multiple radio stations, as well as Wood and Palesotti, and a number of schedules were provided to Plaintiff between April 5, 2007 and the closing date to reflect the ongoing negotiations.  Linder Aff., ¶¶ 3-5; Buchanan Aff., ¶¶ 3, 11 and 12.  The APA, and all versions of the attached schedule were drafted by counsel for Defendants.  Corbett Aff, Ex. I, Linder Aff. ¶ 2.

The parties closed the sale of KXLP on September 1, 2007, and on September 3, 2007, Wood and Palesotti did not report to work at KYSM.

Defendants assert that it was at this time that they first discovered that the Wood and Palesotti employment contracts were listed on the schedule 1.1(d) to the APA by mistake.

On September 28, 2007, Plaintiff's counsel obtained the ex parte TRO, and on October 1, 2007, Wood and Palesotti began broadcasting from KXLP - which changed its format from rock to country.

Standard for Remand

Remand to state court is proper if the district court lacks subject matter jurisdiction over the asserted claims. 28 U.S.C. § 1447(c). In reviewing a motion to remand, the Court must resolve all doubts in favor of remand to state court, and the party opposing remand has the burden of establishing federal jurisdiction by a preponderance of the evidence. In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1983)(citing Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3rd Cir. 1987) cert. dismissed 484 U.S. 1021 (1988)). In determining the propriety of remand, the Court must review the plaintiffs' pleadings as they existed at the time of removal. See Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939); Crosby v. Paul Hardeman, Inc., 414 F.2d 1, 3 (8th Cir. 1969).

Plaintiff asserts that remand is proper, because the requisite jurisdictional amount of $75,000 is not met in this case. In determining the amount in

controversy, the Court begins its analysis with the principle that the amount claimed by a plaintiff ordinarily controls in determining whether jurisdiction lies in federal court.  Zunamon v. Brown, 418 F.2d 883, 885 (8th Cir. 1969) (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-289 (1938)). Nonetheless, "the plaintiffs allegations of requisite jurisdictional amount are not necessarily dispositive of the issue." Id.

Defendants assert that the amount in controversy is easily met here.  The radio stations at issue in this case generate in excess of $1 million dollars per year, and that the on-air personalities often contribute to this revenue and ratings increase by 40-50%.  This calculates to $400,000 to $500,000 per year.  As the contracts in question may be extended through June 2009, the total value of the employment contracts at issue is approximately $700,000 to $900,000.

Plaintiff asserts that the amount in controversy is measured by the three and one-half weeks Wood and Palesotti were off the air, as its request for money damages is based on its tortious interference claim.  During that time period, Plaintiff asserts it incurred costs of approximately $4,000 in filling Wood's and Palesotti's on-air time slots.  Plaintiff further asserts that assuming the station does generate $1 million in revenue per year, and that on-air personalities generate 50% of that amount or $500,000, the amount in controversy would only be $33,700 - which represents the three and one-half week portion of the year they

did not work.

The Court does not agree with Plaintiff's position. Count I of Plaintiff's complaint is a request for declaratory judgment - for a finding that the employment contracts of Wood and Palesotti were validly assigned to it in the APA. Plaintiff's request thus puts the value of the entire contract at issue, not just the three and one-half weeks to which Plaintiff refers. Accordingly, Defendants have met their burden of demonstrating that the amount in controversy exceeds $75,000. As this Court has diversity jurisdiction over Plaintiff's claims, the motion to remand will be denied.

Standard for Preliminary Injunctive Relief

The Eighth Circuit has established the following analysis to be used in considering a request for preliminary injunctive relief:

> [W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

Dataphase Sys., Inc. v. C. L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981); accord Medtronic, Inc. v. Gibbons, 527 F. Supp. 1085, 1090 (D. Minn. 1981), aff'd, 684 F.2d 565 (8th Cir. 1982). None of these factors by itself is determinative, rather the four factors must be balanced to determine whether they tilt toward or away

from the requested injunctive relief.  <u>West Pub. Co. v. Mead Data Cent., Inc.</u>, 799 F.2d 1219, 1222 (8th Cir. 1986).

    1.  Irreparable Harm

In this case, this factor is given little weight as the parties assert they will each be irreparably harmed if the on air radio personalities, Wood and Palesotti, do not broadcast for their respective stations, as Wood and Palesotti are valuable employees, and both parties intend to use their popularity to bring in significant marketing revenue and increase listenership.  Because it would be difficult to measure such damages, its harm would be irreparable.  <u>See</u> <u>Flying Cross Check, LLC v. Central Hockey League, Inc.</u>, 153 F. Supp.2d 1253, 1259 (D. Kan. 2001).  Thus, for purposes of determining the propriety of injunctive relief, the Court will place emphasis on the next factor - likelihood of success on the merits.

    2.  Likelihood of Success on the Merits

Plaintiff asserts it is likely to succeed on the merits as the employment contracts at issue were clearly assigned to Plaintiff pursuant to the APA.  Defendants drafted the APA, and the attached schedules, and pursuant to its terms, it is a fully integrated agreement.  <u>See</u> APA, Article 11.6.  In addition, the language of the contract is unambiguous.  As such, parol evidence cannot be introduced to contradict any provisions of the APA.  <u>See</u> <u>Wessels, Arnold &</u>

Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1435 (8th Cir. 1995) (applying Minnesota law); Knox v. Cook, 446 N.W.2d 1, 4 (Neb. 1989) (applying Nebraska law).  The Court has reviewed the APA, and the attached schedules, and finds the contract language is unambiguous.  Accordingly, parol evidence will not be admitted to contradict any terms of the APA.

Despite the clear and unambiguous language of the APA, it is Defendants' position that the parties contracted for the sale of only the assets that are "used or held for use in the operation " of KXLP.  APA ¶ 1.1.  As the employment contracts of Wood and Palesotti were not assets of KXLP, the inclusion of such contracts on the schedule was clearly a mistake.  Defendants thus request the Court order specific performance of the APA, or to reform the erroneous schedule thereto, to ensure the obvious purpose of the APA is maintained.

Defendants' request for specific performance is based on the language contained in Article 1.1 of the APA which references the "assets and properties of Seller, real and personal, tangible and intangible, that are used or held for use in the operation of the Stations" - in this case station KXLP.  Defendants assert that as the employment contracts of Wood and Palesotti were never assets of KXLP, the assignment of such employment contracts was never intended.

A review of the attached schedules, however, lists other items, besides the Wood and Palesotti contracts, that are not identified as a KXLP asset.  For

example, on the last page of schedule 1.1(b), a compaq computer identified as a "KYSM" computer is listed.  Further, schedule 1.1(d) references contracts that involve all stations, KXLP in particular, and multiple stations.  The Wood and Palesotti contracts are listed under the "multiple stations" section.  Because the schedules reference assets and contracts of stations other than KXLP, Defendants have not demonstrated that they are entitled to specific performance.

With respect to Defendants claim for reformation, the Court can reform a written contract if the following elements are proved by evidence that is "clear and consistent, unequivocal and convincing":

> (1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party.

<u>Nichols v. Shelard National Bank</u>, 294 N.W.2d 730, 734 (Minn. 1980) (citation omitted.)

For there to be a mutual mistake "it is necessary that both parties agree as to the content of the document but that somehow through a scrivener's error the document does not reflect that agreement."  <u>Id.</u>  While Defendants take the position that inclusion of the Wood and Palesotti employment contracts on schedule 1.1(d) of the APA was the result of a scrivener's error, Plaintiff asserts there was no such error.  Because Plaintiff asserts that Wood and Palesotti

9

employment contracts were properly included in schedule 1.1(d), this case does not involve a mutual mistake.

Even in cases involving a unilateral mistake, reformation may not be appropriate. "Absent ambiguity, fraud or misrepresentation, a mistake of one of the parties alone as to the subject matter of the contract is not a ground for reformation." Id. (citation omitted). In this case, Defendants presented no evidence of fraud or misrepresentation on the part of Plaintiff. In addition, had Defendants carefully reviewed the schedules that it produced, the mistake in the schedule should have been discovered before the closing - and before any harm resulted. See Id. Accordingly, reformation is not available to the Defendants in this case.

Based on the above, the Court finds Plaintiff will likely succeed on its claim that the Wood and Palesotti employment contracts were validly assigned to Plaintiff pursuant to the APA. This factor thus weighs heavily in favor of Plaintiff's request for injunctive relief. As Defendants have not established a likelihood of success on the merits, this factor weighs against Defendants' requested injunctive relief.

   3. Balance of Harms

As with the irreparable harm factor, this factor is given little weight as the

harms alleged to be suffered by the parties - the loss of Wood and Palesotti as employees - is essentially the same.

4.   Public Interest

The factor weighs in favor of enforcing valid contracts.  <u>Cherne v. Indus. Inc. v. Grounds & Associates, Inc.</u>, 278 N.W.2d 81, 94 (Minn. 1979).  As Plaintiff has demonstrated it will likely succeed on its claim that the APA and attached schedules is a valid contract, this factor weighs heavily in favor of Plaintiff's request for injunctive relief.

After balancing the four factors above, the Court finds that Plaintiff has demonstrated it is entitled to injunctive relief.  The contract at issue is clear and unambiguous.  Despite Defendants' claim of mistake, there is no evidence before the Court that Plaintiff engaged in any fraud or inequitable conduct with respect to such alleged mistake.  Defendants drafted the document at issue, and had every opportunity over a five month period to carefully review its contents prior to closing.

Plaintiff has also shown good cause to extend the TRO issued by the state court.  Accordingly,

IT IS HEREBY ORDERED that

1.   Plaintiff's Motion to Remand, for an Extension of the Temporary Restraining Order and for an Immediate Hearing [Doc. No. 20] is denied in part

and affirmed in part as follows: the motion to remand is DENIED, the motion for an immediate hearing is DENIED AS MOOT, and the motion for an extension of the Temporary Restraining Order is GRANTED.  The Temporary Restraining Order is hereby extended to October 23, 2007.

     2.  Defendant's Motion to Vacate the Temporary Restraining Order and for a Preliminary Injunction [Doc. No. 5] is DENIED.

     3.  Plaintiff's Motion for a Preliminary Injunction [Doc. No. 12] is GRANTED:  Effective October 24, 2007, Defendants are hereby restrained and enjoined, until further notice, as follows:

          i.  During the pendency of this action, Defendants and their respective agents, representatives, and assigns are prohibited from contacting Lisa Wood and Anthony Palesotti;

          ii.  During the pendency of this action, Defendants and their respective agents, representatives, and assigns are prohibited from interfering in any way with the employment contracts between Minnesota Valley and Lisa Wood and Anthony Palesotti, respectively;

          iii.  During the pendency of this action Minnesota Valley is allowed to exercise its employment contracts with Lisa Wood and Anthony Palesotti and Lisa Wood and Anthony Palesotti are specifically allowed to perform their duties under their respective employment contracts; and

    vi. Security in the amount of $ 100,000 is necessary to protect Defendants' interests. Plaintiff shall file with the Clerk of Court a bond in the amount of $100,000.[1]

**IT IS SO ORDERED.**

Dated this 24th day of October, 2007.

                  BY THE COURT:

                  Michael J. Davis
                  Honorable Michael J. Davis

---

[1] The Court has identified a scrivener's error in Defendants' Proposed Findings of Fact, Conclusions of Law and Order filed October 22, 2007. The proposed order submitted by Defendants provides that Defendants' motion for injunctive relief is granted, yet required the Plaintiff to post the bond. See Fed. R. Civ. P. 65(c)(movant for injunctive relief to post security bond).